UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CSC HOLDINGS, INC.,

                Plaintiff,

   -against-                                        <u>REPORT AND</u>
                                                          <u>RECOMMENDATION</u>

DAVID SCHOCK,                                      CV 05-1131 (TCP) (ETB)

                Defendant.
------------------------------------------------------------------------x

TO THE HONORABLE THOMAS C. PLATT, UNITED STATES DISTRICT JUDGE:

CSC Holdings, Inc. ("plaintiff" or "Cablevision") brings this action under the Communications Act of 1934, as amended, 47 U.S.C. §§ 605(a) and 553(a)(1) (the "Cable Act"), against David Schock ("defendant" or "Schock").

In a complaint filed on February 28, 2005, plaintiff alleges that defendant Schock intercepted plaintiff's cable television programming signals without authorization and in violation of Sections 553(a)(1) and 605(a) of the Cable Act. Cablevision alleges that Schock used "pirate" cable television descrambling devices with knowledge and intent that such devices would enable him to receive plaintiff's cable television programming services without plaintiff's authorization.

On June 15, 2005, plaintiff motioned for a default judgment. The Clerk's certificate of default was entered on June 30, 2005. On July 5, 2005, Judge Platt entered a default judgment against the defendant and referred the matter to the undersigned for a Report and Recommendation with respect to the amount of damages, including costs and attorney's fees, to be awarded to plaintiff.

**FACTS**

An inquest was held before the undersigned on August 9, 2005. Plaintiff's counsel indicated that he had been advised by Schock that he would not be present at the inquest, and defendant did not appear. While Cablevision does not know the specific date or dates on which Schock used the pirate decoding device, or the specific programs the defendant actually watched, its damage claim is based in part on the defendant's access to Cablevision's services during the relevant time period. (Pl. Damages Analysis dated Aug. 1, 2005, at 3.)

Donald Kempton ("Kempton"), the manager of anti-piracy investigations at Cablevision, testified that Cablevision scrambles its picture signals so that unauthorized customers cannot watch programs to which they do not subscribe. He stated that addressable converters installed and controlled by Cablevision unscramble the picture signal for customers who do subscribe, and that pirate decoding devices unscramble premium and pay per view channels. Kempton further testified that pirate decoding devices are not addressable or controllable by Cablevision.

Kempton stated that in February 2003, Cablevision seized records from Explore ("Explore") Electronics, a company that distributed illegal decoding devices. Kempton testified that one of the seized invoices indicated that Schock purchased a universal decoding device that would enable him to receive Cablevision's analog cable television programming unlawfully, from Explore on July 11, 2002. (See Pl.'s Ex. 1.) Kempton further testified that between July 2002 and March 2005 (a period of thirty-two months), Schock subscribed to Cablevision's Family level of service, for which he paid approximately $40.00 per month.

Kempton testified that a residential user such as Schock would be charged approximately $80 per month to subscribe to all premium and non-premium programming services, not including pay-per-view programs, and that the total value of all of Cablevision's pay-per-view programming services in a given month is approximately $400, although over time, Cablevision has offered more digital-based pay-per-view programming and less analog-based pay-per-view programming.

2

Plaintiff requests that the court award statutory damages against Schock for the period between July 2002 and March 2005, which consists of the period between the time Schock purchased the illegal device and the time the plaintiff filed the complaint. For this period of thirty-two months, plaintiff requests damages in the amount of $3,680.00. Plaintiff arrived at this amount by: (1) subtracting the costs of the defendant's level of service during this period from the costs of the premium level of service ($80-$40) to arrive at $40; (2) adding $40 to $75, which represents an estimate of unauthorized pay-per-view programming and a deterrence penalty, to arrive at $115; and (3) multiplying $115 by 32, the number of months for which the plaintiff seeks damages, to arrive at $3,680.00.

## DISCUSSION

A.   Default Judgment

When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-appearing party. See Fed. R. Civ. P. 55. After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability." Time Warner Cable of N.Y. v. Rivera, No. 92-2339, 1995 WL 325429, at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable of N.Y. v. Barbosa, No. 98-3522, 2001 WL 118606, at *5 (S.D.N.Y. Jan. 2, 2001) (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)). Damages, however, must be proven, usually "at an evidentiary proceeding at which the defendant is afforded an opportunity to contest the amount claimed." Rivera, 1995 WL 325429, at *2 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1993)). Cablevision "is entitled to all reasonable inferences from the evidence it offers." Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

B.   Statutory Violations of the Cable Act and Related Damages

When a court is unable to calculate actual damages, the court will award statutory damages. See Kingvision Pay-Per-View Ltd. v. Las Cazuelas Mexican Restaurant, No. 99-10041, 2000 WL 264004, at *2 (S.D.N.Y. Mar. 9, 2000) (awarding statutory damages where actual damages are not readily ascertainable). Cablevision seeks statutory damages for violations of 47 U.S.C. §§ 553(a)(1) and 605(a). The Court recommends that the request for statutory damages be granted, as further discussed below.

Cablevision claims unauthorized reception and interception of plaintiff's cable television signals by Schock under 47 U.S.C. §§ 553(a)(1) and 605(a). Section 553(a)(1) states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Section 605(a) provides, in pertinent part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Thus, Sections 553 and 605 prohibit "the unauthorized interception and reception of cable programming." Lokshin, 980 F. Supp. at 112. For violations of Section 553(a)(1), a plaintiff may recover "an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). The statutory damages award for each violation of Section 605(a) ranges from $1,000 to $10,000. See 47 U.S.C. 605(e)(3)(C)(i)(II). When both statutory provisions apply, the court must assess damages under Section 605 because Section 605 provides for a higher damages award than Section 553. See International Cablevision, Inc. v. Sykes ("Sykes II"), 75 F.3d 123, 133 (2d Cir. 1996); Time Warner Cable of New York v. Olmo, 977 F. Supp. 585, 589 (E.D.N.Y. 1997).

When actual damages cannot be calculated, the court may consider factors which include loss of revenue, indirect harm such as signal degradation and leakage (which violates Federal Communications regulations) and deterrence. See New York City Corp. v Rosa, No. 01-4822, 2002 U.S. Dist. LEXIS 6140, at *12 (S.D.N.Y. Apr. 3, 2002) (awarding the plaintiff damages based on the defendant's willfulness, compensation for the plaintiff, and deterrence of future misconduct); New York City Corp. v. Flores, No. 01-5935, 2001 WL 761085, at *4 (S.D.N.Y. July 6, 2001) (awarding elevated statutory damages of $10,000 after considering these factors, along with the actual value of stolen services); Time Warner Cable v. Barbosa, No. 98-3522, 2001 WL 118608, at *5 (S.D.N.Y. Jan. 2, 2001) (considering the defendants' willful actions of ignoring the court and deterrence of future perpetrators in awarding damages of approximately $9,000, which was twice the cost of fees avoided by defendants); Community Television Sys., Inc. v. Caruso, 134 F. Supp. 2d 455, 461-62 (D. Conn. 2000) (considering the factors of TCI's good will and integrity, as well as the lost tax revenue to the state of Connecticut in awarding elevated statutory damages of $10,000).

C. Calculation of Damages

There are three different methods used to calculate statutory damages: "(1) assess at the maximum statutory rate; (2) estimate the amount of services the defendant pirated and apply a multiplier to that sum; or, (3) accept plaintiff's estimate of the amount of services pirated." CSC Holdings, Inc. v. Ruccolo, No. 01-5162, 2001 WL 1658237, at *2 (S.D.N.Y. Dec. 21, 2001). Although plaintiff has elected to recover statutory, rather than actual, damages, the approximate value of services is a logical starting point in determining the amount of damages to award. See Time Warner Cable v. Herrera, No. 98-7534, 2001 WL 1590519, at *4 (E.D.N.Y. Oct. 30, 2001).

In determining the appropriate damages, the court has considered the level and cost of services used by Schock, the length of time the defendant subscribed to Cablevision, and the

defendant's conduct in failing to answer the complaint. The Court has also considered other factors, such as deterrence to other potential violators, loss of goodwill to Cablevision, and loss of tax revenue to New York. Finally, the Court has considered the delay between the time the plaintiff seized Explore's records in February 2003, and the time it filed a complaint against Schock in March 2005. During this intervening period of more than two years, the plaintiff was aware of Schock's possession of the pirate device, but nevertheless continued to provide him with cable services, apparently as a business judgment in plaintiff's interest.

In contract law, "[t]he venerable rule that requires a plaintiff to mitigate his damages has been explained by the principle that 'damages which the plaintiff might have avoided with reasonable effort [are] not caused by the defendant's wrong [and] therefore, are not to be charged against him.'" M. Golodetz Export Corp. v. S/S Lake Anja, 751 F.2d 1103, 1112 (2d Cir.1985) (quoting 2 Williston on Contracts § 1353, at 274 (1962)). If the plaintiff fails to mitigate his damages, "any award of damages will be reduced by any unnecessary increase in damages due to the failure of the plaintiff to avoid them." Drummond v. Morgan Stanley & Co., Inc., No. 95 Civ.2011, 1996 WL 631723, at *2 (S.D.N.Y. Oct. 31, 1996) (citations omitted and internal quotations omitted).

While this is not strictly a breach of contract action, at least one other court in this circuit, when assessing damages in similar circumstances, has taken into account Cablevision's choice to continue providing cable service to a subscriber suspected of stealing service. Cablevision Systems New York City, Corp. v. Landron, No. 02-CV-2957, 2003 WL 430347, at *1-2 (S.D.N.Y. Jan. 21, 2003). In Landron, the Court asked plaintiff's attorney what steps plaintiff took to prevent defendant from using the illegal pirate device. Id. at *1. By letter, the plaintiff's attorney responded that "' Cablevision could legally discontinue cable service to one suspected of stealing service, [but] it elects not to do so for pragmatic business reasons. . . Instead, it sends one or more

6

demand letters, warning that use of a descrambler without authorization violates both federal and state law, and offering pre-litigation settlement terms. . . .'" Id. (quoting letter dated December 31, 2002 from plaintiff's attorney Michael Cassell to the court).

The Landron court noted that, while mitigation of damages is usually regarded as a affirmative defense, "Cablevision's election not to discontinue service, but rather to take in $35.00 per month, is evidence to be considered when determining just how severely it has been damaged." Id. at *2. Accordingly, the court found that when determining damages for theft of cable services by calculating the approximate benefit to a defendant who is still in possession of the device, instead of using the date the plaintiff filed the complaint as the "ending point", the court may elect instead to use the date of the last demand letter. Id. at *3.

To calculate damages in this case, I recommend using a monthly multiplier, based on the difference in the monthly cost of unauthorized premium service plus $75.00, which represents an estimate of unauthorized pay-per-view programming intercepted and a deterrence penalty,. See Herrera, 2001 WL 1590519, at *5; see also Time Warner Cable v. Foote, No. 99-4974, 2002 WL 1267993, at *6 (E.D.N.Y. Mar. 22, 2002). By using a pirate decoder, Schock had unauthorized and unlimited access to additional premium cable channels and specialty services for a period of at least thirty-two (32) months, beginning in July 2002 and continuing through at least March 2005. However, Cablevision learned of Schock's possession of the illegal device in February 2003, yet elected not to file a complaint until March 2005. The date of the last demand letter sent to Schock is unknown. Based on the plaintiff's failure to avoid damages once it learned that defendant possessed the device, I recommend that damages against the defendant be calculated for a period of nineteen (19) months, from July 2002 to February 2004, one year after plaintiff learned that defendant possessed the device. This would appear to be a more than reasonable period to permit Cablevision to resolve the theft issue without the necessity of bringing a legal action.

7

Accordingly, for the ongoing violations of Sections 553(a)(1) and 605(a), I recommend damages in the amount of $2,185.00.[1]

D.	Request for Recovery of Costs and Attorney's Fees

Section 553 permits the court, in its discretion, to award attorney's fees, whereas the award of attorney's fees under Section 605 is mandatory. See Sykes II, 75 F.3d at 127; see also Community Television Sys., Inc. v. Caruso, 284 F.3d 430, 434 (2d Cir. 2002). I have reviewed the Affirmation of Services and Supplemental Affirmation of Services in Support of Inquest submitted by plaintiff's counsel, Michael Cassell, requesting $1,383.00 in attorney's fees. (See Affirmation of Michael Cassell, dated August 1, 2005, at 3 and Supplemental Affirmation of Services in Support of Inquest, dated August 15, 2005, at 2.) These affirmations are supported by contemporaneous time records. The time spent and the hourly rates described for the services of legal personnel who worked on this matter are reasonable. I recommend that attorney's fees be awarded in the sum of $1,383.00, plus costs in the amount of $289.00,[2] for a total award of $1,672.00 in costs and attorney's fees.

## RECOMMENDATION

For the foregoing reasons, and based on the evidence and affidavits submitted, the undersigned recommends that the court award plaintiff, CSC Holdings, Inc., the following: (1) $2,185.00 for Schock's unauthorized access to additional Cablevision channels from July 2002 to February 2004; and (2) attorney's fees and costs in the amount of $1,672.00, for a total award of $3,857.00.

---

[1] These calculations are as follows: (19 months unauthorized access) X (($80 for all premium Cablevision channels) - ($40 credit for services for which Schock paid) + ($75 deterrence penalty)) = $2,185.00.

[2] Plaintiff incurred a cost of $39 in serving the defendant as well as $250 in filing fees.

8

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), and 72(b); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 506 U.S. 1038 (1992); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Plaintiff's counsel is directed to serve a copy of this report on all parties upon receipt.

SO ORDERED.

Dated: Central Islip, New York
September 9, 2005

<u>/s/ E.Thomas Boyle</u>
E. THOMAS BOYLE
United States Magistrate Judge